**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SAMAN A., | ) | |
| | ) | |
| Plaintiff, | ) | No. 22-cv-7320 |
| | ) | |
| v. | ) | Magistrate Judge Beth W. Jantz |
| | ) | |
| MARTIN J. O'MALLEY, Commissioner of | ) | |
| the Social Security Administration,[1] | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Saman A.[2] appeals the decision of the Commissioner of the Social Security

Administration ("Commissioner") denying his application for supplemental security income. The

parties have filed cross motions for summary judgment. As detailed below, Plaintiff's motion for

summary judgment (Dkt. 15) is DENIED, and the Commissioner's motion for summary judgment

(Dkt. 20) is GRANTED. The decision of the Commissioner is affirmed.

**I.    Background**

Plaintiff filed for child's insurance benefits on September 6, 2020, and protectively filed

for Title XVI supplemental security income on June 26, 2020, with an alleged disability onset date

of June 20, 2020.[3]  (Administrative Record ("R.") 54.)  Plaintiff's applications were denied initially

and upon reconsideration.  (*Id.*)  Plaintiff requested a hearing before an Administrative Law Judge

("ALJ"), which was held on January 12, 2022.  (*Id.*)  On February 2, 2022, the ALJ issued an

---

[1] On December 23, 2023, Martin J. O'Malley was sworn in as Commissioner of the Social Security Administration; pursuant to Federal Rule of Civil Procedure 25(d)(1), he is substituted for his predecessor, Kilolo Kijakazi, as the proper defendant for this action.

[2] In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by her first name and the first initial of her last name(s).

[3] Plaintiff originally claimed an onset date of November 1, 2006, but voluntarily amended the onset date at the hearing to June 20, 2020. (R. 54)

unfavorable decision finding that Plaintiff was not disabled as defined in the Social Security Act. (R. 54-66.)  The Appeals Council denied Plaintiff's request for review on October 27, 2022 (R. 1-3), leaving the ALJ's decision as the final decision of the Commissioner, reviewable by the District Court under 42 U.S.C. §405(g); *see Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

The ALJ's opinion followed the five-step analytical process required by 20 C.F.R. §416.920.  At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of June 20, 2020.  (R. 57.)  At Step Two, the ALJ found Plaintiff had the severe impairment of autism spectrum disorder.  (*Id*.)  At Step Three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1.  (*Id*.)  Before Step Four, the ALJ found that Plaintiff had the RFC to perform the full range of work at all exertional levels with the following non-exertional limitations: he can understand, remember, and carry out simple job instructions in a routine work setting with few, if any, changes; he is able to tolerate occasional interaction with coworkers and supervisors but should not participate in any collaborative joint projects with them or engage the public; he must not have a fast-paced job with mandatory numerically strict hourly production quotas but is able to meet end-of-the-day employer expectations.  (R. 59.)  At Step Four, the ALJ determined Plaintiff had no past relevant work.  (R. 64.)  At Step Five, the ALJ found there were jobs in significant numbers in the national economy that Plaintiff can perform, given his age, education, work experience, and residual functional capacity.  (*Id*.)  In light of these findings, the ALJ found that Plaintiff was not disabled under the Social Security Act.  (R. 65.)

II.     **Social Security Regulations and Standard of Review**

In disability insurance benefits cases, a court's scope of review generally is limited to deciding whether the final decision of the Commissioner of Social Security is based upon

substantial evidence. *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024). Substantial

evidence "means—and means only—such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Id.* (quoting *Biestek v. Berryhill*, 587 U.S. 97, 102, 139 S. Ct.

1148, 1154, 203 L.Ed.2d 504 (2019)). While reviewing the Commissioner's decision, the Court

"will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or

substitute our judgment for the ALJ's determination so long as substantial evidence supports it."

*Id.* at 1052-53 (quoting *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021)). On the other hand,

the Court cannot let the Commissioner's decision stand if the decision lacks sufficient evidentiary

support, an adequate discussion of the issues, or is undermined by legal error. *Lopez ex rel. Lopez*

*v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also* 42 U.S.C.§ 405(g).

## III.        Discussion

Plaintiff raises three issues that he contends require remand: 1) the "ALJ Reversibly Erred

by Failing to Accommodate His Own Findings;" 2) the "ALJ Reversibly Erred in Assessing the

Specialist Opinion Evidence;" and 3) the "ALJ Failed to Set Forth a Legally Sufficient Symptom

Evaluation." (Dkt. 15 at 2.) As discussed below, the Court rejects these arguments and affirms

the decision of the ALJ.

### A.        The ALJ's Non-Exertional Limitations Were Supported by Substantial Evidence.

First, Plaintiff contends that the ALJ provided "no support" for finding that Plaintiff "could

perform simple job instructions in a routine work setting with no fast paced or strict hourly

production quotas," despite finding that Plaintiff had a moderate limitation in the domain of

concentrating, persisting, or maintaining pace. (Dkt. 15 at 5.) This argument is often raised in this

District, but the Seventh Circuit has noted that "[e]ven generic limitations, such as limiting a

claimant to simple, repetitive tasks, may properly account for moderate limitations in

concentration, persistence, and pace, so long as they 'adequately account for the claimant's demonstrated psychological symptoms' found in the record." *Urbanek v. Saul*, 796 F. App'x 910, 914 (7th Cir. 2019) (quoting *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019)). "Instead, the factually specific question to be answered in each case is whether the ALJ has adequately explained, with support from the medical record, how a restriction to simple, routine, and repetitive tasks addresses the claimant's specific concentration, persistence, or pace limitations." *Janette B. v. Kijakazi*, No. 20 C 5673, 2023 WL 184234, at *8 (N.D. Ill. Jan. 13, 2023).

Here, the ALJ relied on the opinions of two state agency consultants, who "opined that the claimant retained the mental capacity for work-related activities that involved simple instructions and routine/repetitive tasks with limited social demands, with work settings involving limited sustained contact with coworkers and the public." (R. 63.) The ALJ adequately explained how these opinions were supported by the consultants' "explanation and review of the evidence," and were "consistent with the claimant's treatment history, the examination findings detailed above, the consultative examinations, and the wide range of activities of daily living." (*Id.*) In a recent case, this Court rejected a similar argument, where the ALJ relied on the state agency consultants' limiting the claimant to "simple, repetitive tasks or to unskilled work" despite a "moderate limitation in maintaining concentration, persistence, or pace." *See Kristen B. v. O'Malley*, No. 22-CV-6304, 2024 WL 3226577, at *4 (N.D. Ill. June 27, 2024) (Jantz, M.J.) (finding ALJ's opinion supported by substantial evidence where "the ALJ specifically relied on the opinions of state agency consultants, who found that Plaintiff's moderate limitations in concentration, persistence, and maintaining pace would nonetheless specifically allow her 'to meet the basic mental demands of competitive, remunerative, two to three step tasks on a sustained basis, in settings of low social contact, including the abilities to understand, carry out, and remember instructions'"). This Court believes that the ALJ's citation to (and reliance on), *inter alia*, the state agency consultants'

findings constitutes substantial evidence to connect the ALJ's non-exertional restrictions to the moderate limitations in concentration, persistence, and pace, and so will not remand on this basis.

**B.** **The ALJ Properly Evaluated Plaintiff's Treating Physician Opinion.**

Plaintiff takes issue with the ALJ's analysis of the opinion evidence submitted by Plaintiff's treating psychiatrist, Dr. Syed Rahim, M.D. (Dkt. 15 at 10.) The Court finds that the ALJ's analysis of Dr. Rahim's medical opinion was satisfactory and will not remand on that basis.

For claims filed after March 27, 2017, the old "treating physician rule"[4] has been replaced by 20 C.F.R. § 404.1520c. Treating physicians' opinions are no longer entitled to presumptive controlling weight; the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. §404.1520c(a). Now, the Commissioner does not "articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your record;" instead, the ALJ "will articulate how [the ALJ] considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in" the regulation. 20 C.F.R. §404.1520c(b)(1). Consistency and supportability "are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be," and, "[t]herefore we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision." 20 C.F.R. §404.1520c(b)(2). The ALJ may consider the other factors (*e.g.*, the treating relationship or the provider's specialty), but is not required to do so. *Id.*

---

4   20 C.F.R. §404.1527.

Dr. Rahim's opinion is dated December 16, 2020, and notes that Dr. Rahim had been treating Plaintiff monthly since October 2020 (so a little more than 2 months).  (R. 886-888.)  Dr. Rahim diagnosed Plaintiff with autism spectrum disorder, and identified the following symptoms: poor memory; emotional lability; mood disturbance; difficulty thinking or concentrating; social withdrawal or isolation, blunt, or inappropriate affect; feelings of guilt/worthlessness; oddities of thought, perception, speech, or behavior; psychomotor agitation or retardation; loss of intellectual ability of 15 points or more; pathological dependence or passivity; and anhedonia or pervasive loss of interests.  (R. 886.)   Dr. Rahim stated that Plaintiff's condition would cause him to be absent from work more than three times per month and would interfere with his attention and concentration at work over 21% of the time.  (R. 887-888.)   Finally, Dr. Rahim noted Plaintiff as having marked limitations in the functional domains of understanding, remembering, or applying information and concentration, persistence, or maintaining pace, and extreme limitations in the domains of interacting with others and adapting or managing oneself.  (R. 888.)

In finding Dr. Rahim's opinion was not persuasive, the ALJ wrote:

> The undersigned does not find these opinions persuasive, particularly as the opinions lack explanations and lack specific functional limitations, particularly as this doctor primarily checked off boxes. Further, it is not consistent with the doctor's own notes showing improvement, i.e., under good control, "doing great", "doing better" and "mood had been calmer" or the other evidence that indicates the claimant was doing well.

(R. 62-63 (internal citations omitted).)

As shown by that quotation, the ALJ considered the requisite factors (*i.e.*, supportability and consistency) and cited evidence for why the ALJ did not believe that Dr. Rahim's opinion met those factors. Supportability concerns "the objective medical evidence and supporting explanations presented by a medical source . . . to support his or her medical opinion."  20 C.F.R. § 404.1520c(c)(2).  The ALJ did not believe that Dr. Rahim's opinions, which consisted of checked

6

boxes with very little narrative explanation detailing the reasons for Dr. Rahim's opinions, was adequately supported. *See Traci W. v. Kijakazi*, No. 3:21-CV-50431, 2022 WL 18674585, at \*5 (N.D. Ill. Dec. 6, 2022), *report and recommendation adopted,* No. 21 C 50431, 2023 WL 1970095 (N.D. Ill. Feb. 13, 2023) (affirming ALJ where "the ALJ questioned [treating psychiatrist's] 'checkmark opinions' but did so in weighing the supportability and consistency of the opinion as required by the regulations"); *see also Winkelman v. Saul*, 835 F. App'x 889, 892 (7th Cir. 2021) ("Check-box forms, unexplained, are generally weak evidence").

Consistency concerns whether the medical opinion is consistent "with the evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. §404.1520c(c)(3). Here, the ALJ cited to specific portions of the record from Dr. Rahim's own notes that contradicted Dr. Rahim's opinions that Plaintiff had marked or extreme limitations in all four functional domains. While the Plaintiff may disagree with the conclusions reached by the ALJ, the Court's role is limited to determining if the ALJ's analysis of opinion evidence is based on substantial evidence and follows the requirements of the regulations. The Court believes this analysis here to be adequate and affirms the ALJ's decision on this issue.

### C. The ALJ's Treatment of Plaintiff's Subjective Symptoms is Supported by Substantial Evidence and is not Patently Wrong.

Plaintiff argues that the ALJ erred in analyzing Plaintiff's subjective symptoms. However, as has been noted many times before, a reviewing court will uphold an ALJ's findings regarding subjective symptoms unless they are "patently wrong." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017). Plaintiff raises several issues with the ALJ's decision, but none of them rise to the level of being patently wrong.

First, Plaintiff argues that the ALJ failed to consider evidence from Plaintiff's school that support Plaintiff's position that he is disabled. (Dkt. 15 at 14.) While there certainly is evidence

that supports Plaintiff's position, there also is ample evidence that cuts the other way. For example, Plaintiff was described in his annual IEP review as being "funny, respectful, well-liked, positive, hardworking, athletic, willing to participate, able to follow instructions, able to work well with others, and increasingly open-minded." (R. 402.) It was noted that he had "met all h (sic) graduation requirements to receive his high school diploma" and had been evaluated by a job coach as having many vocational strengths, including "hard working and willingness to try new tasks," "learns new tasks quickly once modeled," "stays focused on tasks when distractions are limited," "eagerness to work," "accuracy of tasks (when distractions are limited)," and "job flexibility." (R. 404-405.) It is not the Court's job to re-weigh evidence or review the evidence in the light most favorable to the Plaintiff. There is substantial evidence in the record to support the ALJ's finding that Plaintiff's school records suggested that he was not as limited as he claimed.

Second, Plaintiff maintains that the ALJ's citation to Plaintiff's daily activities such as playing video/computer games, doing laundry, cleaning, and shopping at Walgreen's "did not explain how these activities suggested that [Plaintiff] could perform full-time work." (Dkt. 15 at 15.) However, the ALJ did not equate those daily activities to full-time work, and it is appropriate for an ALJ to consider daily activities in this more limited light when assessing subjective symptoms. *See Latina W. v. Kijakazi*, No. 21 C 5344, 2023 WL 4273663, at *3 (N.D. Ill. June 29, 2023) ("The ALJ thus did not compare Plaintiff's reported activities with an ability to work; instead, the ALJ merely used those activities to illustrate that Plaintiff's reported issues focusing were not as severe as she alleged"). Plaintiff therefore has failed to show that the ALJ's discussion of daily activities was reversible error, and the Court rejects that argument.

Third, Plaintiff asserts that it was error for the ALJ to rely on the instances in the record in which Plaintiff denied symptoms because Plaintiff's condition was variable and he had limited insight. (Dkt. 15 at 15.) Although there were times where the ALJ noted that the record reflected

8

that Plaintiff's insight was found to be impaired or poor, (R. 61, 62), the ALJ also cited several instances from both Dr. Rahim's notes and consultative examinations where Plaintiff's insight was described as "good," (*e.g.*, R. 957), "fair," (*e.g.*, R. 959, 971), or "intact," (R. 766). (R. 59, 61-62.) Therefore, there was substantial evidence in the record suggesting that Plaintiff had the insight to accurately describe the nature of his symptoms to medical providers, and it was not error for the ALJ to rely on Plaintiff's reports to doctors that he was feeling good and doing better managing his condition. Although there was evidence in the record calling Plaintiff's insight into question at times, it is not appropriate for the Court to re-weigh the evidence on review given that there was also evidence going in the other direction, as laid out above. Given the evidence in the record demonstrating that Plaintiff had adequate insight at times, his self-reported symptoms are not inherently untrustworthy, and it was not error for the ALJ to rely on them.

Finally, Plaintiff contends that the ALJ erred by describing Plaintiff's treatment as "routine" or "conservative." However, the Social Security Regulations allow the ALJ to consider the treatment and medication in determining a claimant's symptoms. 20 C.F.R. §404.1529(c)(3)(v). It was appropriate for the ALJ to consider the level of treatment Plaintiff received in analyzing his symptoms. *See Silvia P. v. O'Malley*, No. 23 CV 1450, 2024 WL 3455021, at \*7 (N.D. Ill. July 18, 2024) ("In evaluating the plaintiff's credibility, the ALJ appropriately considered the conservative nature of the plaintiff's treatment"). The ALJ noted that Plaintiff's conservative treatment was in line with his non-disabling symptoms, (R. 60, 63), which supported the ALJ's conclusions. The ALJ's citing to and relying upon conservative or routine treatment was not patently wrong, and the Court rejects this argument as well.

## IV. Conclusion

As detailed above, Plaintiff's motion for summary judgment (Dkt. 15) is DENIED, and Defendant's motion for summary judgment (Dkt. 20) is GRANTED. The decision of the

Commissioner is affirmed.

ENTER:

Dated: 9/17/24

BETH W. JANTZ
United States Magistrate Judge

10